1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
9                                   AT SEATTLE

10   NAVIGATORS INSURANCE                      CASE NO. C10-665MJP
     COMPANY, et al.,
11                                             ORDER DENYING DEFENDANTS'
                         Plaintiffs,           MOTION FOR SUMMARY
12                                             JUDGMENT
                 v.
13
     CALPORTLAND COMPANY, et al.,
14
                         Defendants.
15

16
             This matter comes before the Court on Defendants' motion for summary judgment.  (Dkt.
17
     No. 67.)  Having reviewed the motion, the response (Dkt. No. 72), the reply (Dkt. No. 75), and
18
     all related papers, the Court DENIES the motion.  The Court GRANTS Plaintiffs' motion to
19
     strike, but imposes no sanctions.
20
                                         **Background**
21
             Plaintiffs are a group of insurers who filed suit against CalPortland Company, and
22
     Glacier Northwest, Inc., alleging that Defendants negligently unloaded a barge loaded with
23
     aggregate on the Duwamish River, causing it to fail.  (Compl. ¶¶ 11-13.)  Defendants' actions
24

ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 1

1    allegedly caused the barge to suffer damage to the hull, deck, and internal structures.  (¶ 14.)

2    The barge was declared a constructive total loss and the Plaintiff insurers incurred the expense of

3    the constructive loss, surveys, towage, repairs and additional expenses.  (¶¶ 14-15.)  Plaintiffs

4    pursue claims of negligence, breach of warranty of fitness, breach of contract, and bailment.  (¶¶

5    16-36.)

6         Defendants now move for summary judgment, contending that Island Tug and Barge

7    Company ("ITB"), Plaintiffs' insured and owner of the barge, did not properly maintain the

8    barge and that this alone caused the barge to fail.  Defendants ask for dismissal of all four claims

9    on the theory that ITB's negligence breached the contract between ITB and Defendants and that

10   it is the sole cause of the barge's failure.  Plaintiffs dispute the factual basis on which Defendants

11   seek dismissal and separately move to strike one document and obtain sanctions.

12                                    **Analysis**

13   A.    Standard

14        Summary judgment is not warranted if a material issue of fact exists for trial.  Warren v.

15   City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996).  The

16   underlying facts are viewed in the light most favorable to the party opposing the motion.

17   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "Summary

18   judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for

19   the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party

20   moving for summary judgment has the burden to show initially the absence of a genuine issue

21   concerning any material fact.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970).  If the

22   moving party makes this showing, the burden shifts to the nonmoving party to establish the

23   existence of an issue of fact regarding an element essential to that party's case, and on which that

24

ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 2

1  party will bear the burden of proof at trial.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24

2  (1986).  To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead

3  must have evidence showing that there is a genuine issue for trial.  <u>Id.</u> at 324.

4  B.    <u>Disputes of Fact Exist</u>

5        Defendants contend that the failure to maintain the barge in a seaworthy state through an

6  established maintenance schedule was a fundamental breach of contract and the cause of the loss.

7  These are urged as bases to dismiss the breach of contract and negligence claims.  Genuine

8  issues of material fact exist both of these issues.

9        Defendants argue that they are not liable on Plaintiffs' breach of contract claim because

10  ITB failed to keep the barge in a seaworthy state according to an established maintenance

11  schedule as required by the shipping contract between Glacier and ITB.  Defendants contend that

12  ITB breached the term in the contract requiring ITB to "exercise due diligence to select and

13  maintain tugs and barges utilized in service of this Agreement in a thoroughly professional,

14  seaworthy state according to an established maintenance schedule which accommodates

15  OWNER's [Glacier] seasonal requirements."  (Dkt. No. 68 at 29.)  The contract does not define

16  the words "professional, seaworthy state" or "established maintenance schedule," and

17  Defendants have not provided any meaningful argument on what these terms mean.  Plaintiffs

18  correctly point out that "professional, seaworthy state" does not mean that the barge had to

19  conform to the absolute warranty of seaworthiness, fitness, suitability, or workmanlike service,

20  as that warranty was expressly disclaimed in the contract.  (<u>See</u> Dkt. No. 72 at 22; Dkt. No. 68 at

21  29.)  For purposes of deciding this motion, the Court employs a simple dictionary definition for

22  seaworthy, rather than any technical maritime term, as it appears the parties expressly decline to

23  invoke the absolute warranty of seaworthiness.  The Court defines the term "seaworthy" to mean

24

ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 3

1   "fit to traverse the seas."  Am. Heritage Dict. at 1572 (4th ed. 2000).  The Court also defines the

2   term "professional" to mean "conforming to the standards of a profession."  Id. at 1400.

3            The Court also notes that the contract provides that Glacier may be liable for any damage

4   it causes to the ITB barge.  The contract states that "Any damage, breakage, or loss to the barges

5   (in excess of reasonable wear and tear) due to or caused by OWNER's [Glacier's] fault in

6   loading, stowing, trimming, or discharging cargo shall be for OWNER's account, and the cost

7   thereof shall be reimbursed to CARRIER in addition to the regular charges under this

8   Agreement."  (Dkt. No. 68 at 32.)  Plaintiffs invoke this as one basis for their breach of contract

9   claim.

10           Genuine issues of material fact exist as to whether the ITB barge was kept in a

11  "thoroughly professional, seaworthy state."  Defendants argue that the barge was corroded in

12  tanks two and three and that it lacked sufficient stiffener support of the bottom plate.  (Dkt. No.

13  67 at 16-17.)  Plaintiffs point to contrary facts, noting that the barge was used two days prior to

14  the accident with more tonnage than was present when it sank and that it was seaworthy because

15  it traversed the sea.  (Dkt. No. 72 at 19.)  They also point to testimony from Bruce Vo, who

16  performed repairs on the barge shortly before the accident, and stated that it was "in good

17  condition" and "good shape."  (Dkt. No. 68 at 86-87.)  He also testified that he had welded

18  cracks along the midship area in possibly tanks two and three, and performed any repairs needed.

19  (Id.)  This raises a genuine issue as to whether the ship was in a "professional, seaworthy state."

20  It certainly appears that the boat was fit to traverse the seas just two days prior to the accident.

21           The parties also present disputed facts as to whether the barge was on an "established

22  maintenance schedule."  Defendants point out that Frank Ellefson, ITB's president, testified that

23  there was not an established maintenance schedule.  (Dkt. No. 68 at 19-20.)  He also testified that

24

ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 4

1   if any problems were noticed, they would be fixed.  (Id.)  Defendants also cite to and rely on

2   Jonathan Anderson's testimony to suggest there was no established maintenance.  However,

3   Anderson testified to the contrary that "a barge does not go longer than seven months without

4   touching our facility" for inspection or repairs.  (Dkt. No. 58 at 69.)  Anderson stated that "[w]e

5   take care of the problems that have been called out, and we go a little bit further."  (Dkt. No. 58

6   at 70.)  Defendants' reliance on Anderson's testimony does little more than raise a dispute of fact

7   as to whether the barge was on an established schedule and what exactly that might have been.

8   There is no reason an established schedule could not simply to inspect the barge every seven

9   month and make repairs as needed.  Taken together, the disputes of fact as to whether the barge

10  was seaworthy and whether it was kept on an established maintenance schedule preclude the

11  Court from granting summary judgment.

12          The Court also finds a genuine issue of material fact as to what caused the barge to fail.

13  Defendants seem to suggest that this issue is dispositive of the negligence claim.  Defendants

14  rely on the report of Bradley Lamkin, Defendant's expert, to conclude that the barge had

15  excessive corrosion to the stiffeners and welds in starboard tank no. 2 and port tank no.3.  (Dkt.

16  No. 67 at 17.)  Plaintiffs point out, however, that Lamkin's report is based on investigations

17  undertaken after the barge spent over a year under water, casting doubt as to whether the

18  corrosion he observed existed at the time of the accident.  (Dkt. No. 72 at 20.)  Plaintiffs also

19  present testimony from Bruce Vo, who stated that he repaired any damage to the vessel in the

20  same area (tanks two and three) and that the barge was in good condition.  Moreover, Plaintiffs'

21  own expert, Paul Zankich, disputes the conclusions drawn by Lamkin and suggests that the

22  unloading of the aggregate from the barge caused the loss.  Defendants suggest that Zankich's

23  opinion is worthless because he did not inspect the vessel.  Yet Zankich disputes the conclusions

24

1   Lamkin reaches and the Court is not in a position to resolve this dispute of opinion.  (See Ex. D.

2   to Zankich Decl.)  On the disputed facts in the record there is no way for the Court to resolve the

3   dispute of fact as to causation of the barge's failure.  This is yet another reason the Court

4   DENIES summary judgment.

5   C.        Motion to Strike

6          Plaintiffs request the Court strike Exhibit U to the declaration of Terrance McGee,

7   counsel for Defendants.  (Dtk. No. 72 at 1-6.)  The Court agrees.

8          An organization responding to a deposition request under Rule 30(b)(6) must "designate

9   one or more officers, directors, or managing agents"  to speak to the subjects noted in a

10  deposition notice.  "The person designated must testify about information known or reasonably

11  available to the organization."  Fed. R. Civ. P. 30(b)(6).  "The corporate party then has an

12  affirmative duty to educate and to prepare the designated representative for the deposition."

13  Pioneer Drive, LLC v. Nissan Diesel Am., Inc., 262 F.R.D. 552, 558 (D. Mont. 2009).  Rule

14  37(d) grants the Court with discretion to impose sanctions if a party fails to attend its own

15  deposition.  "Many courts treat the failure of an organization to produce a prepared and educated

16  witness under Rule 30(b)(6) as tantamount to a nonappearance at a deposition, meriting the

17  imposition of sanctions."  Id. at 559-60.

18         Exhibit U must be stricken because Defendants did not produce a person knowledgeable

19  of the contents of Exhibit U.  The notice of deposition specifically set out at least the first page of

20  Exhibit U as a topic of the 30(b)(6) deposition.  (Ex. A to Krisher Decl.)  Defendants designated

21  Scott Nicholson as the 30(b)(6) designee, and when presented with the first page of Exhibit U, he

22  stated "I can't follow this document.  This document actually means nothing to me."  (Nicholson

23  Dep. at 84, 89.)  He explained that he discussed the paper with Mike Moore and they believed it

24

1   showed how much material was off-loaded from the barge.  (Id. at 85-86.)  Nicholson did not do

2   any further investigation.  (Id. at 86.)  In their reply brief, Defendants now admit that the

3   document is not as Nicholson described and that counsel's attestation in his first declaration as to

4   Exhibit U was incorrect.  Counsel had averred that Exhibit U contains "true and correct copies of

5   documents and calculations for the weight of cargo remaining on Barge ITB 240 when she

6   failed, all made or utilized in the course of Glacier Northwest's investigation of the accident."

7   (McGee Decl. ¶ 22.)  Defendants now maintain that Exhibit U contains "a conversion sheet," and

8   two product inventory sheets used by Janis Larsen, Glacier's barge dispatcher.  (Dkt. No. 75 at 5;

9   Dkt. No. 76 at 2.)  It does not appear that Exhibit U shows the calculations for the weight of

10  cargo remaining on Barge ITB 240.  This confirms that Defendants did not present an adequate

11  30(b)(6) designee on this issue and it cannot rely on the documents in Exhibit U.  Defense

12  counsel states that it simply did not occur to him to ask Larsen to explain the document because

13  they had not thought of it.  (Dkt. No. 75 at 5.)  The onus is on Defendants, however, to find the

14  person with knowledge, and it does not appear there was any valid reason why it was not

15  discovered earlier.  Defendants failed to meet its burden and essentially failed to present a

16  witness on this issue.

17          The Court finds it proper to GRANT the motion, and it STRIKES Exhibit U.  The Court

18  does not find an award of sanctions necessary.   Nicholson was presented for deposition on

19  several other subjects beyond Exhibit U, and Plaintiffs have not alleged that his deposition on

20  those points was deficient.  It is not the case that Nicholson was effectively absent for this whole

21  deposition.  The Court does not find it proper to award sanctions on this issue.

22  \\

23  \\

24

1

**Conclusion**

2          The Court DENIES the motion for summary judgment. Disputed material facts exist as to

3   the whether either party breached the contract and what caused the barge to fail.  Those issues

4   must be resolved at trial.  The Court GRANTS Plaintiffs' motion to strike, and STRIKES Exhibit

5   U to McGee's first declaration in support of summary judgment.

6          The clerk is ordered to provide copies of this order to all counsel.

7          Dated this 30th day of January, 2012.

8

9

10                                              Marsha J. Pechman
                                                United States District Judge
11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT- 8