UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NAVIGATORS INSURANCE COMPANY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CALPORTLAND COMPANY, et al., <br><br> Defendants. | CASE NO. C10-665MJP <br><br> ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendants' motion for summary judgment. (Dkt. No. 67.) Having reviewed the motion, the response (Dkt. No. 72), the reply (Dkt. No. 75), and all related papers, the Court DENIES the motion. The Court GRANTS Plaintiffs' motion to strike, but imposes no sanctions.

**Background**

Plaintiffs are a group of insurers who filed suit against CalPortland Company, and Glacier Northwest, Inc., alleging that Defendants negligently unloaded a barge loaded with aggregate on the Duwamish River, causing it to fail. (Compl. ¶¶ 11-13.) Defendants' actions

1 allegedly caused the barge to suffer damage to the hull, deck, and internal structures. (¶ 14.)
2 The barge was declared a constructive total loss and the Plaintiff insurers incurred the expense of
3 the constructive loss, surveys, towage, repairs and additional expenses. (¶¶ 14-15.) Plaintiffs
4 pursue claims of negligence, breach of warranty of fitness, breach of contract, and bailment. (¶¶
5 16-36.)

6 Defendants now move for summary judgment, contending that Island Tug and Barge
7 Company ("ITB"), Plaintiffs' insured and owner of the barge, did not properly maintain the
8 barge and that this alone caused the barge to fail. Defendants ask for dismissal of all four claims
9 on the theory that ITB's negligence breached the contract between ITB and Defendants and that
10 it is the sole cause of the barge's failure. Plaintiffs dispute the factual basis on which Defendants
11 seek dismissal and separately move to strike one document and obtain sanctions.

**Analysis**

A. Standard

Summary judgment is not warranted if a material issue of fact exists for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996). The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). If the moving party makes this showing, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that

party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. Id. at 324.

B.     Disputes of Fact Exist

Defendants contend that the failure to maintain the barge in a seaworthy state through an established maintenance schedule was a fundamental breach of contract and the cause of the loss. These are urged as bases to dismiss the breach of contract and negligence claims. Genuine issues of material fact exist both of these issues.

Defendants argue that they are not liable on Plaintiffs' breach of contract claim because ITB failed to keep the barge in a seaworthy state according to an established maintenance schedule as required by the shipping contract between Glacier and ITB. Defendants contend that ITB breached the term in the contract requiring ITB to "exercise due diligence to select and maintain tugs and barges utilized in service of this Agreement in a thoroughly professional, seaworthy state according to an established maintenance schedule which accommodates OWNER's [Glacier] seasonal requirements." (Dkt. No. 68 at 29.) The contract does not define the words "professional, seaworthy state" or "established maintenance schedule," and Defendants have not provided any meaningful argument on what these terms mean. Plaintiffs correctly point out that "professional, seaworthy state" does not mean that the barge had to conform to the absolute warranty of seaworthiness, fitness, suitability, or workmanlike service, as that warranty was expressly disclaimed in the contract. (See Dkt. No. 72 at 22; Dkt. No. 68 at 29.) For purposes of deciding this motion, the Court employs a simple dictionary definition for seaworthy, rather than any technical maritime term, as it appears the parties expressly decline to invoke the absolute warranty of seaworthiness. The Court defines the term "seaworthy" to mean

1  "fit to traverse the seas." Am. Heritage Dict. at 1572 (4th ed. 2000). The Court also defines the

2  term "professional" to mean "conforming to the standards of a profession." Id. at 1400.

3        The Court also notes that the contract provides that Glacier may be liable for any damage

4  it causes to the ITB barge. The contract states that "Any damage, breakage, or loss to the barges

5  (in excess of reasonable wear and tear) due to or caused by OWNER's [Glacier's] fault in

6  loading, stowing, trimming, or discharging cargo shall be for OWNER's account, and the cost

7  thereof shall be reimbursed to CARRIER in addition to the regular charges under this

8  Agreement." (Dkt. No. 68 at 32.) Plaintiffs invoke this as one basis for their breach of contract

9  claim.

10       Genuine issues of material fact exist as to whether the ITB barge was kept in a

11 "thoroughly professional, seaworthy state." Defendants argue that the barge was corroded in

12 tanks two and three and that it lacked sufficient stiffener support of the bottom plate. (Dkt. No.

13 67 at 16-17.) Plaintiffs point to contrary facts, noting that the barge was used two days prior to

14 the accident with more tonnage than was present when it sank and that it was seaworthy because

15 it traversed the sea. (Dkt. No. 72 at 19.) They also point to testimony from Bruce Vo, who

16 performed repairs on the barge shortly before the accident, and stated that it was "in good

17 condition" and "good shape." (Dkt. No. 68 at 86-87.) He also testified that he had welded

18 cracks along the midship area in possibly tanks two and three, and performed any repairs needed.

19 (Id.) This raises a genuine issue as to whether the ship was in a "professional, seaworthy state."

20 It certainly appears that the boat was fit to traverse the seas just two days prior to the accident.

21       The parties also present disputed facts as to whether the barge was on an "established

22 maintenance schedule." Defendants point out that Frank Ellefson, ITB's president, testified that

23 there was not an established maintenance schedule. (Dkt. No. 68 at 19-20.) He also testified that

24

if any problems were noticed, they would be fixed. (Id.) Defendants also cite to and rely on Jonathan Anderson's testimony to suggest there was no established maintenance. However, Anderson testified to the contrary that "a barge does not go longer than seven months without touching our facility" for inspection or repairs. (Dkt. No. 58 at 69.) Anderson stated that "[w]e take care of the problems that have been called out, and we go a little bit further." (Dkt. No. 58 at 70.) Defendants' reliance on Anderson's testimony does little more than raise a dispute of fact as to whether the barge was on an established schedule and what exactly that might have been. There is no reason an established schedule could not simply to inspect the barge every seven month and make repairs as needed. Taken together, the disputes of fact as to whether the barge was seaworthy and whether it was kept on an established maintenance schedule preclude the Court from granting summary judgment.

The Court also finds a genuine issue of material fact as to what caused the barge to fail. Defendants seem to suggest that this issue is dispositive of the negligence claim. Defendants rely on the report of Bradley Lamkin, Defendant's expert, to conclude that the barge had excessive corrosion to the stiffeners and welds in starboard tank no. 2 and port tank no.3. (Dkt. No. 67 at 17.) Plaintiffs point out, however, that Lamkin's report is based on investigations undertaken after the barge spent over a year under water, casting doubt as to whether the corrosion he observed existed at the time of the accident. (Dkt. No. 72 at 20.) Plaintiffs also present testimony from Bruce Vo, who stated that he repaired any damage to the vessel in the same area (tanks two and three) and that the barge was in good condition. Moreover, Plaintiffs' own expert, Paul Zankich, disputes the conclusions drawn by Lamkin and suggests that the unloading of the aggregate from the barge caused the loss. Defendants suggest that Zankich's opinion is worthless because he did not inspect the vessel. Yet Zankich disputes the conclusions

1  Lamkin reaches and the Court is not in a position to resolve this dispute of opinion.  (See Ex. D.

2  to Zankich Decl.)  On the disputed facts in the record there is no way for the Court to resolve the

3  dispute of fact as to causation of the barge's failure.  This is yet another reason the Court

4  DENIES summary judgment.

5  C.     Motion to Strike

6      Plaintiffs request the Court strike Exhibit U to the declaration of Terrance McGee,

7  counsel for Defendants.  (Dtk. No. 72 at 1-6.)  The Court agrees.

8      An organization responding to a deposition request under Rule 30(b)(6) must "designate

9  one or more officers, directors, or managing agents" to speak to the subjects noted in a

10 deposition notice.  "The person designated must testify about information known or reasonably

11 available to the organization."  Fed. R. Civ. P. 30(b)(6).  "The corporate party then has an

12 affirmative duty to educate and to prepare the designated representative for the deposition."

13 Pioneer Drive, LLC v. Nissan Diesel Am., Inc., 262 F.R.D. 552, 558 (D. Mont. 2009).  Rule

14 37(d) grants the Court with discretion to impose sanctions if a party fails to attend its own

15 deposition.  "Many courts treat the failure of an organization to produce a prepared and educated

16 witness under Rule 30(b)(6) as tantamount to a nonappearance at a deposition, meriting the

17 imposition of sanctions."  Id. at 559-60.

18     Exhibit U must be stricken because Defendants did not produce a person knowledgeable

19 of the contents of Exhibit U.  The notice of deposition specifically set out at least the first page of

20 Exhibit U as a topic of the 30(b)(6) deposition.  (Ex. A to Krisher Decl.)  Defendants designated

21 Scott Nicholson as the 30(b)(6) designee, and when presented with the first page of Exhibit U, he

22 stated "I can't follow this document.  This document actually means nothing to me."  (Nicholson

23 Dep. at 84, 89.)  He explained that he discussed the paper with Mike Moore and they believed it

24

1  showed how much material was off-loaded from the barge. (Id. at 85-86.) Nicholson did not do
2  any further investigation. (Id. at 86.) In their reply brief, Defendants now admit that the
3  document is not as Nicholson described and that counsel's attestation in his first declaration as to
4  Exhibit U was incorrect. Counsel had averred that Exhibit U contains "true and correct copies of
5  documents and calculations for the weight of cargo remaining on Barge ITB 240 when she
6  failed, all made or utilized in the course of Glacier Northwest's investigation of the accident."
7  (McGee Decl. ¶ 22.) Defendants now maintain that Exhibit U contains "a conversion sheet," and
8  two product inventory sheets used by Janis Larsen, Glacier's barge dispatcher. (Dkt. No. 75 at 5;
9  Dkt. No. 76 at 2.) It does not appear that Exhibit U shows the calculations for the weight of
10 cargo remaining on Barge ITB 240. This confirms that Defendants did not present an adequate
11 30(b)(6) designee on this issue and it cannot rely on the documents in Exhibit U. Defense
12 counsel states that it simply did not occur to him to ask Larsen to explain the document because
13 they had not thought of it. (Dkt. No. 75 at 5.) The onus is on Defendants, however, to find the
14 person with knowledge, and it does not appear there was any valid reason why it was not
15 discovered earlier. Defendants failed to meet its burden and essentially failed to present a
16 witness on this issue.

17       The Court finds it proper to GRANT the motion, and it STRIKES Exhibit U. The Court
18 does not find an award of sanctions necessary. Nicholson was presented for deposition on
19 several other subjects beyond Exhibit U, and Plaintiffs have not alleged that his deposition on
20 those points was deficient. It is not the case that Nicholson was effectively absent for this whole
21 deposition. The Court does not find it proper to award sanctions on this issue.
22 \\
23 \\
24

## Conclusion

The Court DENIES the motion for summary judgment. Disputed material facts exist as to the whether either party breached the contract and what caused the barge to fail. Those issues must be resolved at trial. The Court GRANTS Plaintiffs' motion to strike, and STRIKES Exhibit U to McGee's first declaration in support of summary judgment.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 30th day of January, 2012.

Marsha J. Pechman
United States District Judge